UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DANNY AGMON, et al.,

                        Plaintiffs,

            - against -

JETBLUE AIRWAYS CORPORATION,

                        Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-2393 (PKC) (CHK)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Danny Agmon, Edit Agmon, Eliot Agmon, Michael Agmon, Ted Agmon, and Joey Agmon bring this action against Defendant JetBlue Airways Corporation for alleged religious discrimination when Plaintiffs were removed from a JetBlue flight traveling from New Jersey to Aruba on January 23, 2022. (*See generally* Compl., Dkt. 1.) Plaintiffs assert violations of federal anti-discrimination laws under 42 U.S.C. § 1981, 42 U.S.C. § 2000d, and 29 U.S.C. § 44902, as well as state law claims for common law negligence and intentional infliction of emotional distress. (*Id.*) Defendant now moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, the Court grants Defendant's motion to dismiss, and Plaintiffs' Complaint is dismissed in its entirety.

## BACKGROUND

### I. Factual Background[1]

Danny and Edit Agmon and their four adult sons—Eliot, Michael, Ted, and Joey—are an orthodox Jewish family. (Compl., Dkt. 1, ¶¶ 11–12.) On January 23, 2022, the Agmons were

---

[1] The following facts are derived from Plaintiffs' Complaint. (Compl., Dkt. 1.) The Court "accept[s] all well-pleaded allegations in the [C]omplaint as true, drawing all reasonable inferences in [P]laintiff[s'] favor." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022)

scheduled to fly from New Jersey to Aruba on JetBlue Flight 345 out of Newark Liberty International Airport at 8:30am.  (*Id.* ¶ 11.)  Prior to boarding their flight, the four Agmon sons "wrapped tefillin, put on yarmulkes, and prayed in Hebrew in full view of JetBlue employees at the gate."  (*Id.* ¶ 12.)  After boarding the flight and while waiting for the plane to take off, one of the sons, Eliot Agmon, continued to wear his yarmulke and pray in Hebrew.  (*Id.*)  The Agmons also conversed with each other in Hebrew in front of the JetBlue flight crew.  (*Id.*)  At least one of the JetBlue flight attendants gave Eliot Agmon "dirty looks after observing his religious practices and overhearing him speaking Hebrew."  (*Id.* ¶ 13.)  Right before the flight was set to take off, Eliot Agmon "briefly pulled his face mask down below his nose only to scratch an itch on his nose, and immediately put it back up properly."  (*Id.* ¶ 14.)  In response to that action, the JetBlue flight crew removed all six members of the Agmon family from the flight.  (*Id.* ¶ 15.)

Plaintiffs allege that JetBlue employees used the pulling down of Eliot Agmon's face mask as "mere pretext to discriminate against the visibly Jewish family and eject them from the flight." (*Id.* ¶ 17.)  Plaintiffs incurred additional expenses from having to change their travel arrangements, and suffered and will continue to suffer "trauma, stigmatization, severe mental and emotional distress, depression, despair, embarrassment, public humiliation, anxiety, fear, and apprehension associated with airports and flying," due to this incident.  (*Id.* ¶¶ 21, 25.)

## II. Procedural Background

On March 31, 2024, Plaintiffs filed this action against Defendant asserting causes of action for: (1) discrimination and denial of equal rights under 42 U.S.C. § 1981; (2) discrimination and denial of equal rights under 42 U.S.C. § 2000d; (3) violation of 49 U.S.C. § 44902; (4) common

---

(quoting *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)).

law negligence; and (5) intentional infliction of emotional distress. (Compl., Dkt. 1, ¶¶ 26–75.) Plaintiffs seek compensatory, consequential, and punitive damages, as well as attorney's fees and costs. (*Id.* at 11–12.) On August 30, 2024, Defendant filed a motion for pre-motion conference for its anticipated motion to dismiss, to which Plaintiffs responded on September 30, 2024. (Dkts. 12, 15.) The Court denied Defendant's motion for pre-motion conference as unnecessary, (10/2/2024 Dkt. Order), and Defendant's motion to dismiss was fully briefed as of December 12, 2024, (*see* Defs.' Mot. Dismiss, Dkt. 17; Pls.' Opp'n Mot. Dismiss ("Pls.' Br."), Dkt. 18). In their opposition brief, Plaintiffs withdrew their state law claim for intentional infliction of emotional distress. (Pls.' Br., Dkt. 18, at 10.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When evaluating the sufficiency of a complaint, courts are required to accept the well-

pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2011) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

Defendant seeks dismissal of this action on the grounds that Plaintiffs' claims are (1) preempted and time-barred by the Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention"); (2) preempted by the Airline Deregulation Act of 1978 (the "ADA") and the Federal Aviation Act (the "FAA"); and (3) inadequately pleaded. (Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Br."), Dkt. 17-1, at 1.)  Because the Court finds that Plaintiffs' claims are preempted and time-barred by the Montreal Convention, Defendant's motion to dismiss is granted.[2]

### I. Plaintiffs' Claims Are Preempted By The Montreal Convention

Defendant asserts that all of Plaintiffs' claims must be dismissed as preempted because the alleged injury occurred onboard an international carriage and therefore falls within the "substantive scope" of the Montreal Convention. (Def.'s Br., Dkt. 17-1, at 6–7.) Plaintiffs' position is that their claims are outside the scope of the Montreal Convention, and thus not preempted, because the JetBlue employees' alleged discriminatory animus formed *prior* to boarding. (Pls.' Br., Dkt. 18, at 2.) The Court agrees with Defendant that the Montreal Convention

---

[2] Accordingly, the Court declines to reach Defendant's remaining arguments under the ADA, FAA, and state law.

4

applies and, as the exclusive remedy for this type of injury, preempts all of Plaintiffs' federal and state law claims.

### A. The Montreal Convention and International Carriage

The liability of international air carriers, like JetBlue, is "governed by international agreement rather than the local law of individual nations." *Badar v. Swissport USA, Inc.*, 53 F.4th 739, 743 (2d Cir. 2022). The Montreal Convention, which went into effect in the United States in 2003, "update[ed] and replac[ed] the uniform system of liability for international air carriers previously established by the Warsaw Convention." *In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d 447, 452 (E.D.N.Y. 2007) (citing *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)); *see* Convention for Int'l Carriage by Air, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (May 28, 1999) (hereinafter "Montreal Convention"). It established a "modernized uniform liability regime for international air transportation," *Badar*, 53 F.4th at 743–44 (quoting Montreal Convention, Letter of Submittal, at *6), and "standardize[d] airline liability in cases of death, injury, delay, or damage to cargo," *Unger v. Lot Polish Airlines*, No. 24-CV-4646 (LKE), 2025 WL 1685248, at *4 (E.D.N.Y. June 16, 2025). "Liability for both personal injury and damage to goods during international flight is covered by its provisions." *Best v. BWIA W. Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008) (citing Montreal Convention art. 1, 17).

The Montreal Convention defines "international carriage" as "any carriage in which . . . the place of departure and the place of destination . . . are situated either within the territories of two States Parties [i.e., signatories of the treaty], or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." Montreal Convention art. 1(2). Here, the Agmons' place of departure was the United

5

States, and their place of destination was Aruba—both parties to the Montreal Convention. *See Nektalov v. JetBlue Airways Corp.*, No. 24-CV-0600 (NCM) (TAM), 2024 WL 4515282, at *2 n.3 (E.D.N.Y. Oct. 17, 2024) (noting that courts have applied the Montreal Convention to Aruba as a territory of the Kingdom of the Netherlands). Thus, the Agmons' trip constitutes an "international carriage" under the Montreal Convention.[3]

### B. Preemption

"In lawsuits, the Montreal Convention has two primary functions: (1) supplying causes of action and (2) preemption." *Nektalov*, 2024 WL 4515282, at *2 (citing Montreal Convention art. 17–19, 29). With respect to preemption:

> Article 29 provides that the Montreal Convention preempts a claim arising under federal, state, or local law if the claim falls within the Convention's substantive scope. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 176 (1999). Non-convention claims fall within the Convention's substantive scope if the *when* and *where* of the alleged conduct align with the Convention's provisions. *See King v. Am. Airlines, Inc.*, 284 F.3d 352, 360 (2d Cir. 2002). More specifically, a passenger's claim for injury during international travel is within the Convention's substantive scope, and is thus preempted, if those allegations occured onboard an aircraft or during embarking or disembarking. *Id.* at 360–61. Such claims must therefore be brought under the Convention or not at all. *Id.* at 357.

*Nektalov*, 2024 WL 4515282, at *2.[4] "The Second Circuit has held that federal civil rights and discrimination claims, such as those brought under Section 1981 or Section 1983, are precluded by the Montreal Convention if they arise from acts that fall under the Montreal Convention's

---

[3] This remains true even if the Agmons' tickets were round-trip tickets to and from the United States with an agreed upon stop in Aruba, *see* Montreal Convention art. 1(2), as Defendant's briefing states, (Def.'s Br, Dkt. 17-1, at 5–6).

[4] The Court notes that it "may rely on case law interpreting the Warsaw Convention for provisions that are substantively similar between it and the Montreal Convention," including Article 29. *Nektalov*, 2024 WL 4515282, at *2 (citing *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 245 (2d Cir. 2021)).

6

substantive scope." *Sanches-Naek v. TAP Portugal, Inc.*, 260 F. Supp. 3d 185, 192 (D. Conn. 2017) (collecting cases).

The parties disagree on when and where the alleged injury occurred for purposes of determining whether Plaintiffs' claims are within the substantive scope of the Montreal Convention. Defendant argues that the relevant incident is the removal of the Agmons from the flight, which occurred while they were onboard the aircraft. (Def.'s Br., Dkt. 17-1, at 8–9; Def.'s Reply Mem. Supp. Mot. Dismiss ("Def's Reply"), Dkt. 17-3, at 2.) Plaintiffs' position is that the Montreal Convention does not apply because the alleged discriminatory animus was formed when JetBlue employees observed the family engaging in religious practices and speaking Hebrew at the gate *prior to* "embarkation." (Pls.' Br., Dkt. 18, at 2.) Plaintiffs' position is untenable.

In determining whether a claim falls within the substantive scope of the Montreal Convention, courts look to the "injury-causing event." *Singh v. N. Am. Airlines*, 426 F. Supp. 2d 38, 46 (E.D.N.Y. 2006); *see Bunis v. Israir GSA, Inc.*, 511 F. Supp. 2d 319, 322 (E.D.N.Y. 2007) (noting the critical inquiry is "*where* the alleged accident, i.e. the injury-causing event, occurred" (emphasis in original)). Here, the underlying factual basis for all of Plaintiffs' remaining federal and state law claims is that JetBlue employees discriminated against them on the basis of their race, religion, ancestry, and ethnicity by removing them from the flight after observing their religious practices at the gate and on the aircraft. (*See* Compl., Dkt. 1, ¶¶ 26–64.) Though Plaintiffs are correct in stating that "[t]he critical question for Montreal Convention preemption is when the alleged discrimination occurred – not when its consequences were felt," (Pls.' Br., Dkt. 18, at 2); *see Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 206 (E.D.N.Y. 2012) ("It is the situs of the alleged 'accident,' as opposed to the location of the alleged 'damage

7

sustained' that is critical."), Plaintiffs mistake where the actionable discrimination, or the "accident," occurred, *Bunis*, 511 F. Supp. 2d at 322.

The alleged conduct that occurred at the gate—Plaintiffs' "wrap[ing] tefillin, put[ting] on yarmulkes, and pray[ing] in Hebrew in full view of JetBlue employees," and one of the JetBlue employees giving Eliot Agmon "dirty looks," (Compl., Dkt. 1, ¶¶ 12–13)—would not alone form the basis of any legal claim of discrimination, arising in tort, or otherwise, and thus could not reasonably be construed as the "injury-causing event" for purposes of this inquiry. The "injury-causing event" was Plaintiffs' removal from the flight after the Agmons had boarded the aircraft and after Eliot Agmon removed his mask, which Plaintiffs claim was pretextual and in reality motivated by the JetBlue staff's discriminatory animus. (*Id.* ¶ 17.) This is the "accident" from which all of their alleged injuries flow. *See* Montreal Convention art. 17(1) ("The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that *the accident which caused the death or injury* took place on board the aircraft or in the course of any of the operations of embarking or disembarking." (emphasis added)); *see, e.g.*, *King*, 284 F.3d at 359 (finding racial discrimination claims preempted by Montreal Convention based on when and where plaintiffs were "bumped" from their flight); *Singh*, 426 F. Supp. 2d at 48 (finding the injury-causing event to be when the airline mislabeled "narcotics-laden luggage with plaintiff['s] identification"). To state the obvious: had the Agmons not been removed from the airplane, there would be no injury and no claim. Plaintiffs fail to cite any legal authority for their position that the Court should evaluate preemption at the time the alleged discriminatory animus is formed, rather than when a defendant acts on that animus, causing injury.[5]

---

[5] Even if the Court were persuaded by Plaintiffs' position on this issue, there is serious doubt as to whether the discriminatory animus was, in fact, formed prior to "embarkation" as Plaintiffs suggest. To determine whether passengers were in the course of embarking when an

8

Further, while it is true that Plaintiffs' claims do not involve alleged bodily injury—a requirement for sustaining a claim under the Montreal Convention—this does not remove their claims from the Convention's substantive scope. In evaluating preemption, courts look only to "whether the claimed injury was caused by an event that occurred 'on board the aircraft or in the course of any of the operations of embarking or disembarking,'" not "whether the injury was in fact caused by an 'accident' and whether the injury is 'bodily.'" *Singh*, 426 F. Supp. 2d at 46 (quoting *King*, 284 F.3d at 359). Indeed, even intentional discrimination claims that are not otherwise actionable under the Montreal Convention can still be preempted for falling within its substantive scope. *See King*, 284 F.3d at 355, 361 (holding that discrimination claims arising while embarking on an aircraft are preempted, noting that "the scope of the Convention is not dependent on the legal theory pled nor on the nature of the harm suffered); *Nektalov*, 2024 WL 4515282, at *3 (dismissing similar religious discrimination claims against JetBlue as preempted under the Montreal Convention "even though those claims would be barred under Article 17 [of the Convention] since they are intentional and generally involve psychological and not physical harm").

Accordingly, all of Plaintiffs' federal and state law claims are preempted by the Montreal Convention and must be dismissed.

---

injury occurred, courts in this Circuit consider: "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; [and] (4) the physical proximity of the passengers to the gate." *King*, 284 F.3d at 359 (citation omitted). In some circumstances, passengers need not be in the physical process of boarding the plane—and may instead be simply congregated at the gate—to be engaged in an "operation of embarkation." *Id.*; *see Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 33 (2d Cir. 1975) (holding that plaintiffs were in the course of embarking where they "had already surrendered their tickets, passed through passport control, and entered the area reserved exclusively for those about to depart on international flights"). Nevertheless, the Court need not decide this issue as it does not change the outcome of the preemption analysis in this case.

9

## II.     Plaintiffs' Claims Are Time-Barred

Even if the Court were to grant Plaintiffs leave to amend their Complaint to include causes of action under the Montreal Convention, amendment would be futile. The Montreal Convention carries a two-year statute of limitations: "The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." Montreal Convention art. 35(1). The Agmons' flight from Newark to Aruba was scheduled for January 23, 2022, and the Complaint was filed over two years later on March 31, 2024. (Compl., Dkt. 1, ¶ 11.) Accordingly, even if Plaintiffs could amend their Complaint to state a cause of action under the Montreal Convention—the exclusive remedy for the injuries alleged—Plaintiffs' claims would be time-barred.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims under federal and state law are preempted by the Montreal Convention, Defendant's motion to dismiss is granted, and the Complaint is dismissed in its entirety. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 25, 2025
          Brooklyn, New York

10